Craig A. Harbaugh (Cal Bar No. 194309)
Harbaugh Law, P.C.
360 E. 2nd Street, Suite 800
Los Angeles, California 90012
Telephone: (213) 986-8656
Email: craig@harbaugh.law

Attorney for Defendant
WANYING ZHANG

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WANYING ZHANG,<br><br>Defendant. | Case No. 2:26-MJ-05818-DUTY<br><br>Hon. Steve Kim<br><br>**DEFENDANT'S OPPOSITION TO GOVERNMENT'S REQUEST FOR DETENTION**<br><br>Hearing Date: October 7, 2026<br>Hearing Time: 3:30 p.m.<br>Courtroom: 540 |

## I. INTRODUCTION

Wanying Zhang is an American citizen. She chose this country, took the oath in 2020, and built her life here. She is married to an American citizen, and together they are raising two young daughters in their Southern California home. She obtained her master's degree here and has worked here for a decade.[1]

[1] Pretrial Services Report (PSA Rpt.) at 2-3.

She also has family in China, and she visits them, as millions of naturalized Americans[2] regularly do. Those ties do not make her less American. Ms. Zhang earned her place here. Her husband, her daughters, her home, and her work are all here, and she is not leaving them.

The government is not entitled to a detention order.[3] *First*, it cannot clear the threshold for a hearing at all, because it cannot show that Ms. Zhang presents a serious risk of flight. The alleged surveillance began and ended on a single day, September 1, 2025. The communications it cites ended in October 2025.[4] In the thirteen months between the alleged conduct and her arrest, while the government investigated her, Ms. Zhang traveled abroad as she always has, including to China. She books one-way tickets and buys her return separately; earlier this year, she bought her flight home from China four days before she flew home. The government never sought to stop her, and she came home every time.[5]

Ms. Zhang's latest trip to China, the day of her arrest, followed the same pattern. It was a visit to her mother, planned for weeks and put off until after her daughters' birthdays. The government swore out its complaint in secret and arrested her at the airport.[6] Accepting the government's position requires the Court to assume that

---

[2] About 25.8 million people in the United States, roughly half of the foreign-born population, are naturalized citizens. Cong. Rsch. Serv., IF11806, *Citizenship and Immigration Statuses of the U.S. Foreign-Born Population* 1 (updated Sept. 22, 2026), https://www.congress.gov/crs-product/IF11806.

[3] The government requested detention at the initial appearance. Undersigned counsel is not aware of any written statement of its grounds. Ms. Zhang addresses the grounds she anticipates and reserves the right to respond to any others.

[4] For purposes of this detention hearing only, Ms. Zhang accepts the allegations of the complaint as true, as the Court must at this stage. She does not concede them. She contests the charge and looks forward to establishing her innocence at trial.

[5] Aff. of FBI Special Agent Kevin Holt (Aff.) ¶¶ 8, 61, ECF No. 1; PSA Rpt. at 2-3.

[6] Compl. at 1, ECF No. 1; PSA Rpt. at 4.

Ms. Zhang, unaware of any investigation, planned to abandon her two young daughters, her husband, and her home, for a country she left more than a decade ago.

*Second*, even if the government could clear the threshold for a hearing, it cannot carry its burden of proving that no condition or combination of conditions will reasonably assure her appearance. The people closest to her have stood up for her. Her husband, his sister, his father, and a family friend have agreed to sign as sureties, and the family has pledged the home where her daughters live, totaling well over $800,000 in security. If Ms. Zhang fled, she would lose more than her daughters' home. She would leave her husband's family to pay for her absence.

These conditions will reasonably assure Ms. Zhang's appearance. The Court should deny detention and order her release.

## II. STATEMENT OF FACTS

Ms. Zhang came to the United States in 2014 and became a citizen in 2020. PSA Rpt. at 2. She has been married since 2017, and they have two daughters, ages eight and five. *Id.* For ten years she has sold real estate in Orange County, and she has no criminal history. *Id.* at 3, 4. Ms. Zhang and her husband bought their Irvine home in 2021. In 2024, they moved to a second Irvine home and rented out the first. In June 2026, they sold the second home and moved back into the first. Aff. ¶ 8; PSA Rpt. at 2.

The complaint charges a single violation of § 951 arising from a single day in Seattle on September 1, 2025. Aff. ¶¶ 1, 5, 34-48. FBI Special Agent Kevin Holt's affidavit also traces her travel that year. She was in China in January, June, August, and October 2025, and she came home each time. *Id.* ¶¶ 18, 21-27, 30-33, 61. In October, she wrote that she would stay "[p]robably a month" but came home. *Id.* ¶ 61.

Her 2026 travel followed the same pattern. She flew to China in early 2026, bought a one-way ticket home on April 2 while in China, and flew home on April 6. She flew to Paris on June 22 and home from Nice on July 1, then to Tokyo on July 29 and home on August 20, booking each leg separately. The family canceled a summer

trip to China and Ms. Zhang decided to visit her mother after her daughters' birthdays.

Every investigative step the FBI conducted was covert, including the warrant for Ms. Zhang's iCloud content and FBI surveillance. Aff. ¶¶ 8, 35-38, 47-48. On October 4, 2026, Ms. Zhang was arrested at Los Angeles International Airport with a one-way ticket to China. PSA Rpt. at 4. Agents seized her United States passport, and the FBI found no Chinese passport. *Id.* at 2-3.

Pretrial Services recommends detention on nonappearance grounds, but it identified an available surety, homeownership, family ties, and employment as offsetting factors. PSA Rpt. at 5-6.

## III. ARGUMENT

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). "Only in rare circumstances should release be denied," and "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985).

### A. The Government Has Not Shown the Serious Risk of Flight Required to Hold a Detention Hearing

The government may move for detention only in a case that involves an offense listed in § 3142(f)(1), or one that involves "a serious risk that such person will flee." 18 U.S.C. § 3142(f)(2)(A). "Absent one of these circumstances, detention is not an option." *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999). A charge under 18 U.S.C. § 951 does not itself trigger a detention hearing under § 3142(f)(1). Section 951(a) carries a maximum of ten years, contains no force element, is not an offense under the drug statutes identified in § 3142(f)(1)(C), and is not listed in § 2332b(g)(5)(B), which lists § 956(a)(1) but not § 951. Nor does ordinary § 951 conduct

fall within the other parts of the Bail Reform Act's crime-of-violence definition.[7] The government therefore must establish, by a preponderance, a "serious risk that [Ms. Zhang] will flee." § 3142(f)(2)(A); *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988) (per curiam). These categories "are not mere incantations that will conjure a hearing upon their simple utterance"; the government must "make a factual showing to justify why it should be given a shot at detention." *United States v. Subil*, No. 2:23-cr-00030-TL, 2023 WL 3866709, at *4 (W.D. Wash. June 7, 2023) (finding objection to hearing waived, then ordering release on de novo review). The Court "may not find that a case involves a serious risk of flight just because the Government claims it does, but rather must make its own determination on the issue." *United States v. White*, No. 3:21-cr-00129, 2021 WL 2155441, at *7 (M.D. Tenn. May 27, 2021).

That showing is narrower than the ordinary nonappearance inquiry. "[R]isk of flight is distinguishable from, and more narrow than, risk of non-appearance," and it requires "the presentation of concrete information" that the defendant "poses a great risk" she will "intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision." *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1137, 1138-39 (D. Idaho 2023). Congress required a *serious* risk, and that word must do work: "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . ." *Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). A risk that every defendant facing a federal charge presents is not a serious one. The showing requires "more than evidence of the commission of a serious crime and the fact of a potentially long sentence." *Friedman*, 837 F.2d at 50.

---

[7] The remaining grounds in § 3142(f)(1)(D)–(E) require a separate showing tied to prior convictions or the circumstances of the case. Ms. Zhang has no prior convictions. PSA Rpt. at 4.

The government offers none of the facts that have marked a serious risk of flight, such as aliases or a history as a fugitive. *See Friedman*, 837 F.2d at 50. Its case rests on the charge and on a one-way ticket for a trip she had planned for weeks. Flight means moving "to avoid court proceedings," *Figueroa-Alvarez*, 681 F. Supp. 3d at 1138-39, and a person cannot avoid proceedings she does not know exist. The government in *Friedman* relied on "the nature of the charges against him, the strength of the government's case, the long sentence of incarceration he may receive, his age and the obloquy that he faces in his community." *Id.* at 49. The Second Circuit held that a finding of flight risk on that showing "was clearly erroneous." *Id.* at 50. The threshold is not met, and the Court should not hold a detention hearing.

**B. The Government Cannot Prove by a Preponderance That No Condition Will Reasonably Assure Her Appearance**

Even if the Court reaches the § 3142(g) factors, the government cannot carry its burden.[8] It must prove risk of flight by a "clear preponderance of the evidence," *Motamedi*, 767 F.2d at 1406, and it must show that "no condition or combination of conditions will reasonably assure the appearance of the person as required," 18 U.S.C. § 3142(e)(1). "[T]he weight of the evidence is the least important of the various factors." *Motamedi*, 767 F.2d at 1408.

**1. Zhang's Extensive Community Ties Negates Risk of Nonappearance**

"When assessing an *alien* defendant's ties to the United States," the Ninth Circuit has looked to "how long the defendant has resided in this country, whether defendant has been employed in the United States, whether defendant owns any property in this country, and whether defendant has any relatives who are United States residents or citizens." *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) (emphasis added).

[8] Ms. Zhang objects to the holding of any detention hearing under § 3142(f) and addresses the merits only in the alternative.

Of course, Ms. Zhang isn't an alien but a United States citizen. Regardless, every one of the factors favors Ms. Zhang. She has lived here for twelve years. She has worked in Orange County real estate for a decade. Her family home is in Irvine, where she lives with her husband and daughters. PSA Rpt. at 2-3. Her husband and his family are all in the United States and support her.

Ties like these can outweigh even a direct connection to a foreign government. The Ninth Circuit ordered the release of an Iranian citizen even though the magistrate had found that he was "acting as a de facto purchasing agent for the current Iranian government" and "could return to Iran with impunity." *Motamedi*, 767 F.2d at 1404, 1407-08. His parents' home secured his bond. Ms. Zhang is a citizen, and her family has pledged their home.

**2. Zhang Regularly Purchases One-Way Tickets and Always Returns**

Her history answers the question the ticket raises. She has come home from every trip abroad, to China, to France, and to Japan. Throughout its investigation, the government knew where she lived and never sought to arrest her, restrict her travel, or take her passport. Aff. ¶ 8. A person who means to flee to China does not fly there and come home, again and again, to her husband and daughters. "Mere opportunity for flight is not sufficient grounds for pretrial detention." *United States v. Himler*, 797 F.2d 156, 162 (3d Cir. 1986).

Indeed, even a one-way ticket bought after learning about an investigation does not require detention. In *Subil*, the defendant had "apparently purchased a one-way ticket to Colombia one day after becoming aware of a possible criminal investigation," and the magistrate judge detained him. *Subil*, 2023 WL 3866709, at *8. The district court released him. It weighed his family ties, his surrendered passport, and GPS monitoring. *Id.* at *7-9. Ms. Zhang's case is stronger on each point. She bought her ticket in her own name, on the same one-way pattern as every trip before it, with no knowledge of any investigation.

**3. Ties to China Do Not Justify Detention**

Pretrial Services found a risk of nonappearance based on Ms. Zhang's family ties to China, a reported dual citizenship, and conflicting financial information. PSA Rpt. at 5-6. Conditions answer each one. Her parents live in China, and she visits them. PSA Rpt. at 2. The case agent told Pretrial Services that she is a dual citizen of China but identified no source. Id. at 3. The FBI found no Chinese passport when it arrested her. Id. She travels on her United States passport, and she will declare under penalty of perjury that she holds no foreign passport or travel document. She will also make full financial disclosure and accept a bar on selling, transferring, or encumbering any real property, or transferring any other asset, without the Court's permission.

Even substantial ties to China do not require detention. In *United States v. Hanson*, the court released a naturalized citizen to home confinement even though he owned property in China and had at one time held multiple passports, including Chinese ones. 613 F. Supp. 2d 85, 87-91 (D.D.C. 2009).

**C. The Proposed Conditions Reasonably Assure Her Appearance**

A family's pledge gives a defendant "even greater incentive to choose to appear for trial rather than cause financial ruin to close relatives and friends." *United States v. Chen*, 820 F. Supp. 1205, 1209 (N.D. Cal. 1992). Ms. Zhang proposes: (a) a $100,000 appearance bond on her signature, to be replaced within 30 days by an appearance bond secured by full deeding of the family residence in Irvine, which carries at least $700,000 in equity; (b) affidavits of surety from her husband ($50,000), his sister ($50,000), his father ($10,000), and a family friend ($10,000); (c) home detention with GPS monitoring, with leave only for work, court, counsel, medical needs, her daughters' school activities, and other activities Pretrial Services approves in advance; (d) monitoring of every device she uses; (e) no presence at any airport, seaport, or other port of entry; (f) surrender of all travel documents and a Form CR-37 declaration

that she holds no others; (g) no contact with Individual 1, PRC Official 1, PRC Official 2, or the Victim, except through counsel; (h) full financial disclosure and no transfer of real property or any other asset over a specified amount without the Court's permission; and (i) Pretrial Services supervision.

The statute requires reasonable assurance, not "ironclad guarantees." *Chen*, 820 F. Supp. at 1208. These conditions more than satisfy reasonable assurance. Ms. Zhang will have no travel documents. She cannot go to an airport. A GPS monitor will report where she is at all times and a computer monitor will determine who she's communicating with at all times. And if she fled, she would cost her daughters their home.

## IV. CONCLUSION

For the foregoing reasons, Ms. Zhang respectfully requests that the Court deny the government's request for detention and order her release.

Dated: October 6, 2026

Respectfully submitted,

*/s/ Craig A. Harbaugh*
Craig A. Harbaugh
Attorney for Defendant Wanying Zhang